FILED

JAN 23 2012

RICHARD W. WIEKING
CLERK U.S. DISTRICT COURT,
NORTHERN DISTRICT OF CALIFORNIA

**Cannata Phillips LPA, LLC**
Sam P. Cannata (Ohio #0078621)
9555 Vista Way, Ste. 200
Cleveland, Ohio 44125
Telephone: (216) 438-5091
Facsimile: (216) 587-0999
samcannata@cannataphillipslaw.com

Attorney for Objectors

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| KEVIN EMERY, an individual, on behalf of himself, the general public and those similarly situated<br><br>Plaintiff,<br><br>v.<br><br>ACER AMERICA CORPORATION; AND DOES 1 THROUGH 50<br><br>Defendants. | Case No.: CV-09-1808 (JW)<br><br>**MOTION TO INTERVENE AND OBJECTIONS TO CLASS ACTION SETTLEMENT**<br><br>Trial Judge: Honorable James Ware |

Class members Enzo R. Cannata and Mia G. Cannata ("Objectors") are members of the class by virtue of their respective ownership of Acer AS 1410 computers, serial numbers LXSAB0X06693110F942500 and LXSAB0X0739311240D2500. The computers were purchased and the objectors received them as gifts between March 24, 2005 and May 1, 2011. Objectors are minors and hereby object to having any personal information filed in public documents; therefore, any other necessary information should be requested from their attorney.

Objectors, by and through the undersigned counsel, hereby submit this Motion to Intervene and respectfully put forward the following objections to the proposed class action settlement, pursuant to the class action Notice:

**1. <u>Objection to the Claims Process.</u>**

The claims process is overly complicated; especially for minors and adolescents who make up a significant and silent percentage of the class. The complicated claims procedures force class members to first unearth past documents, receipts, statements, checks, correspondence and/or itemized products and services relating to Acer's product defect, then determine whether they are in Group A, B, or C. There is no justification for forcing class members to unearth excessive documentation, when Acer could easily send the proper programs and equipment to class member using their business records or recall the computers to be fixed by an authorized dealer or Acer America. The claims process in this settlement creates an obstacle few class members will find worth the effort especially, given that each claimant must sign a form under penalty of perjury.

Further repulsing class members away from this Settlement is requiring some class members, who may be in Group A, to send Acer America an additional $10.00 in order to receive certain equipment to rectify Acer's product shortcomings.

The proposed claims process improperly places the burden on the class members to make a claim, thus the settlement has very little value to the class; certainly much less than the **$280,000,000.00 Settlement Value** the parties flaunt in the Notice. The reality is this Settlement's claims process will deter class members from submitting claims and imposes hurdles on potential claimants, thus reducing the actual value of the settlement.

**2. <u>The Court Should Wait For The Claims Data Before Awarding Fees</u>.**

This Honorable Court should wait to award attorneys' fees and plaintiff's incentive award until such time as it has had a chance to review the claims actually made in order to assure it that

the attorneys' fees and awards are reasonably related to the actual benefit received by the Class. This would be in keeping with several cases in other jurisdictions and with the Federal Judicial Center's "Pocket Guide" for managing class action litigation. *"Managing Class Action Litigation: A Pocket Guide for Judges, 3rd Ed,* Barabara J. Rothstein & Thomas E. Willging. Federal Judicial Center, 2010 at 16 suggests that the best way to determine appropriate attorneys' fees and awards is to wait until after the claims process is complete and the value of the benefits to the Class can be established by calculating class members' **actual use.**

In *Yeagley v. Wells Fargo & Co.,* 2008 U.S. Dist. LEXIS 5040 (N.D. Cal. 2008), the court confronted the task of valuing a settlement for the purposes of awarding attorney's fees and stated that "Common sense dictates that a reasonable fee in a class action settlement is a fee that takes into account the actual results obtained. *Id.* at *20-28.

Given the strict eligibility requirements and burdensome claims procedure, identified above, it is likely that class members will be discouraged from filing a claim. If that is the case then this Settlement will have little value and be illusory. In this matter, the Claims Forms are due by March 14, 2012, or 30 days after the Court grants final approval of the settlement, whichever is later. Therefore it is ever more important to wait a bit longer to assess the claims and determine if the settlement value to the class members is fair, adequate and reasonable.

**3. "Clear Sailing" Provision is Inappropriate.**

"Defendant agrees not to oppose or to submit any evidence or argument challenging or undermining such application for attorneys' fees, costs, expenses, or incentive awards" of $1,200,000.00 for attorneys' fees and $15,000.00 for Plaintiff's Award which Class Counsel will seek. Amended Settlement Agreement, Section VI. ¶ 6.1, p. 15. However, this agreement

should not be afforded any weight by this Court, and is clearly not binding on this Court. "[A]ny award of attorney's fees to class counsel must be reasonable in comparison to the benefits conferred on the class through counsel's efforts." *Scardelletti* v. *DeBarr,* 43 Fed. Appx. 525, 528 (4th Cir. 2002) (citations omitted); see *also Brown v. Phillips Petroleum, Co.,* 838 F.2d 451, 453 (10th Cir. 1988). Class Counsel has not shown that the requested fee is justified when compared to the benefits conferred on the Class through counsel's efforts; especially given that the claims period has not ended and the claims data has not been reviewed yet.

"[C]lear sailing provisions ... represent *prima facie* evidence of simultaneous negotiations of merit relief and fees, which is a practice fraught with serious ethical concerns for lawyers representing the class. Both courts and commentators have expressed apprehension that a plaintiff's counsel may be accepting a lower settlement for the class in exchange for a generous and non-adversarial treatment of fees." William D. Henderson, *Clear Sailing Agreements: A Special Form of Collusion in Class Action Settlements, 77* Tul.L.Rev. 813, 815 (2003) (advocating *per se* ban on clear sailing clauses). The Fifth Circuit has stated that "a district court is not bound by the agreement of the parties as to the amount of attorneys' fees. In fixing the amount of attorneys' fees the court must, of course, take all [appropriate] criteria into account, including the difficulty of the case and the uncertainty of recovery. [The Court] is not, however, merely to ratify a pre-arranged compact." *Piambino v. Bailey,* 610 F.2d 1306, 1328 (5th Cir. 1980). Therefore, the Court should disregard the "clear sailing" provision and do its own analysis of the Fee and Award Request.

**4. <u>A Low Number Of Objections Does Not Mean Class Approval.</u>**

Somehow Class Counsel wants the Court to infer that there was "overwhelming positive" approval for this Settlement since no objections have been filed. (Gutride Safier Motion for

Final Approval, ¶5.) However given the structure of class actions, the number of objectors will always be small relative to the size of the class.

The reality is no class member, especially a minor, has the financial incentive (or even the time, given the short notice period) to organize thousands, and sometimes millions, of class members to oppose an unfair settlement; any individual class member's objection will be relatively meaningless at the margin, meaning that individual class members will prefer to free ride off of those who do object. If this Court interprets that a small number of objections supports settlement approval, this would make any objection meaningless because it does not distinguish between good settlements and bad settlements, each of which have absolutely low numbers of, and often times no, objections. This determination would unfairly prejudice absent class members and would be a mistake to infer class approval from the fact of a small number of objectors.

Almost any given class action settlement, no matter how much it betrays the interest of the class, will produce only a small number of objectors. "Silence may be a function of ignorance about the settlement terms or may reflect an insufficient amount of time to object. But most likely, silence is a rational response to any proposed settlement even if that settlement is inadequate. For individual class members, objecting does not appear to be cost-beneficial. Objecting entails costs, and the stakes for individual class members are often low." Christopher R. Leslie, *The Significance of Silence: Collective Action Problems and Class Action Settlements*, 59 Fla. L. Rev. 71, 73 (2007). It is incorrect to argue that this understandable tendency to ignore notice or free-ride on the work of other objectors is best understood as acquiescence in or evidence of support for the settlement. Silence is simply not consent. *Grove v. Principal Mut. Life Ins. Co.*, 200 F.R.D. 434, 447 (S.D. Iowa 2001) (*citing GM Pick-Up*, 55 F.3d at 789).

Acquiescence to a bad deal is something quite different than affirmative support." *In re General Motors Corp. Engine Interchange Litigation*, 594 F.2d 1106, 1137 (7th Cir. 1979).

There is usually little hope that opt-outs can recover for their claims – the entire purpose of Rule 23 class actions is to aggregate claims that would be uneconomical to bring individually. "Almost by definition, most class members have too little at stake to warrant opting out of the class litigation and filing an individual lawsuit. Thus, opting out is probably not a viable option even though a proposed settlement is unfair or inadequate." Leslie, 59 Fla. L. Rev. at 109. "[A] combination of observations about the practical realities of class actions has led a number of courts to be considerably more cautious about inferring support from a small number of objectors to a sophisticated settlement." *GM Pick-Up*, 55 F.3d at 812 (*citing In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 217-18 (5th Cir. 1981)); *Petruzzi's, Inc. v. Darling-Delaware Co.*., 880 F. Supp. 292, 297 (M.D. Pa. 1995). "[A] low number of objectors is almost guaranteed by an optout regime, especially one in which the putative class members receive notice of the action and notice of the settlement offer simultaneously." *Ellis v. Edward D. Jones & Co.*, 527 F. Supp. 2d 439, 446 (W.D. Pa. 2007). "[W]here notice of the class action is, again as in this case, sent simultaneously with the notice of the settlement itself, the class members are presented with what looks like a *fait accompli*." *Mars Steel Corp. v. Continental Illinois Nat'l Bank & Trust Co.*, 834, F.2d 677, 680-681 (7th Cir. 1987) (Posner, J.).

As such, the response from class members cannot be seen as something akin to an election or a public opinion poll. *See GM Pick-Up*, 55 at 813 (finding that "class reaction factor" does not weigh in favor of approval, even when there is low number of objectors in large class, when "those who did object did so quite vociferously"); Theodore Eisenberg & Geoffrey Miller, *The Role of Opt-Outs and Objectors in Class Action Litigation: Theoretical and Empirical*

*Issues*, 57 Vand. L. Rev. 1529, 1532 (2004). A court must act as a guardian for all class members – whether or not they have formally entered the case by registering an objection. "[T]he absence or silence of class parties does not relieve the judge of his duty and, in fact, adds to his responsibility." *Amalgamated Meat Cutters & Butcher Workmen v. Safeway Stores, Inc.*, 52 F.R.D. 373, 375 (D. Kan. 1971).

Thus, in a low-dollar case like this where no class member has economic incentive to object, the presence of any substantive good-faith objections is a noteworthy event. The Court should draw no inference in favor of the settlement from the number of objections, especially given the vociferousness of the objectors. *GM Pick-Up*, 55 F.3d at 812-13; *ALI Principles § 3.05, comment a.* at 206.

**5. <u>Objectors Provide Value To The Settlement.</u>**

Objectors play an important role in assuring that settlements and attorneys' fees and awards are reasonable and fair, which is why their existence is assured and guaranteed under Rule 23(e)(5). Several cases have discussed why objectors are necessary to the class settlement process, including *Vollmer v. Selden,* 350 F.3d 656 (7th Cir. 2003):

> Class counsel, for instance, might settle claims for significantly less than they are worth, not because they think it is in the class's best interest, but instead because they are satisfied with the fees they will take away. [Citation]. Interveners counteract any inherent objectionable tendencies by reintroducing an adversarial relationship into the settlement process and thereby improving the chances that a claim will be settled for its fair value.... The slightness of individual recovery does not make the counsel's purpose invalid nor his role as objector less vital.

350 F.3d at 660 (emphasis added).

Independent information provided by Objector's counsel complements the Court's fiduciary role in protecting the class members, rather than detracting from it, and prevents a rubber stamp of a settlement which may not have resolved the issues in favor of class members.

**6.** Objectors respectfully adopt and incorporate into these Objections all other well-taken, timely filed Objections that are not inconsistent with these Objections. Objectors also reserve the right to supplement these Objections with other and fuller objections.

**7.** Objectors do not plan to attend the fairness hearing, but rather will rely on their written Objections.

**8.** The Class Members have a legally protectable interest in this litigation. That interest will be impacted by the proposed settlement agreement, and the legal fees and awards that are proposed to be paid.

**9.** These Objections, presented to the Court as a matter of right, are properly and timely filed by the Objectors. All of the legally required prerequisites material to these objections have been met.

For the foregoing reasons, Objectors, by and through their Counsel, prays that this Honorable Court:

A. Grant its Motion to Intervene;

B. Sustain these Objections in full;

C. Deny approval of the settlement, for the reasons stated herein;

D. Continue the issue of attorneys' fees and awards for a subsequent hearing after the claims period ends, the claims data has been reviewed and the actual value of the settlement has been assessed.

Respectfully submitted,

Sam P. Cannata

Attorney for the Objectors

**CERTIFICATE OF SERVICE**

I hereby certify that on January 20, 2012, I delivered the foregoing document to be filed by Federal Express to the Clerk of Court, United District Court, Northern District of California, San Francisco Division, 450 Golden Gate Avenue, San Francisco, CA 94102.

I further certify that I mailed the foregoing document by First Class Mail, postage prepaid, to the following participants at the mailing addresses listed:

Plaintiff's Counsel

Adam Gutride
Gutride Safier LLP
835 Douglass St.
San Francisco, CA 94114

Acer's Counsel

Jeff McFarland
Quinn Emanuel Urquhart & Sullivan LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017

Sam P. Cannata

Attorney for the Objectors