*IT IS SO ORDERED*
*Judge James Ware*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| KEVIN EMBRY, an individual, on behalf of himself, the general public and those similarly situated<br><br>Plaintiff,<br><br>v.<br><br>ACER AMERICA CORPORATION; AND DOES 1 THROUGH 50<br><br>Defendants | CASE NO. CV-09-1808 JW<br><br>[PROPOSED] FINAL APPROVAL ORDER AND JUDGMENT<br><br>Date: February 13, 2012<br>Time: 9:00 am<br>Place: Courtroom 9, 19th Floor<br>Judge: Hon. James Ware |

Plaintiff Kevin Embry ("Plaintiff" or "Class Representative") and Defendant Acer America Corporation ("Acer" or "Defendant") have moved the Court for final approval of a proposed class action settlement, the terms and conditions of which are set forth in the Settlement Agreement filed with the Court on August 30, 2010 (Dkt.# 177), as amended.

Having considered all matters submitted to it at the hearing on the motion and otherwise, including the complete record of this action, and good cause appearing therefore, the Court hereby finds and concludes as follows:

1. The capitalized terms used in this Final Approval Order and Judgment shall have the same meaning as defined in the Settlement Agreement except as may otherwise be ordered.

2. The Court has jurisdiction over this case and over all claims raised therein and all Parties thereto.

3. The Court finds that the prerequisites of Federal Rule of Civil Procedure 23(a) and (b)(3) have been satisfied for certification of the Settlement Class for settlement purposes because: Settlement Class Members are ascertainable and are so numerous that joinder of all members is impracticable; there are questions of law and fact common to the Settlement Class; the claims and defenses of the Class Representative are typical of the claims and defenses of the Settlement Class they represent; the Class Representative has fairly and adequately protected the interests of the Settlement Class with regard to the claims of the Settlement Class he represents; the common questions of law and fact predominate over questions affecting only individual Settlement Class Members, rendering the Settlement Class sufficiently cohesive to warrant a class settlement; and the certification of the Settlement Classes is superior to individual litigation and/or settlement as a method for the fair and efficient resolution of this matter.

4. For purposes of the Settlement and this Final Approval Order and Judgment, the Court hereby finally certifies the following Settlement Class: All persons who, from March 24, 2005, through May 1, 2011, <u>purchased</u> in the United States a PC manufactured by Defendants that was advertised or marketed by Defendants to include a Microsoft Windows operating system, except for purposes of resale. Excluded from the Settlement Class are the Honorable Judge James Ware, David A. Rotman, and any member of their immediate families; any government

1  entity; Acer; any entity that directly or indirectly controls, or is controlled by, or is in common
2  control with Acer; any of Acer's officers, directors, employees, legal representatives, heirs, suc-
3  cessors, or assigns; and the persons listed in Exhibit A to the Declaration of Amy L. Lake (Dkt.#
4  204), each of whom timely opted out of the Settlement Class.

5      5.     The Court hereby finally certifies Plaintiff Kevin Embry as Settlement Class
6  Representative, and Gutride Safier LLP as Class Counsel.

7      6.     The Parties complied in all material respects with the Notice Plan set forth in the Set-
8  tlement Agreement. The Court finds that the Notice Plan set forth in section IV of the Settlement
9  Agreement and effectuated pursuant to the Preliminary Approval Order constituted the best notice
10 practicable under the circumstances and constituted due and sufficient notice to the Settlement
11 Class of the pendency of the Litigation; the existence and terms of the Settlement Agreement;
12 their rights to make claims, opt out, or object; and the matters to be decided at the Final Approval
13 Hearing.  Further, the Notice Plan satisfies the Federal Rules of Civil Procedure, the United States
14 Constitution, and any other applicable law including Rule 23 of the Federal Rules of Civil Proce-
15 dure and the Class Action Fairness Act of 2005, 28 U.S.C. § 1715.  Defendant provided notice of
16 the Settlement to the appropriate state and federal government officials and filed with the Court
17 proof of compliance with the Class Action Fairness Act of 2005, 28 U.S.C. § 1715 (CAFA No-
18 tice).

19     7.     The Court finds that the Settlement is in all respects fair, reasonable and adequate.
20 The Court therefore finally approves the Settlement for all the reasons set forth in the Motion for
21 Final Approval including, but not limited to, the fact that the Settlement Agreement was the prod-
22 uct of informed, arms-length negotiations between competent, able counsel and conducted with
23 the oversight and involvement of an independent, well respected, and experienced mediator; the
24 record was sufficiently developed and complete through meaningful discovery and motion pro-
25 ceedings to have enabled counsel for the Parties to have adequately evaluated and considered the
26 strengths and weaknesses of their respective positions; the Litigation involved disputed claims,
27 and this dispute underscores the uncertainty and risks of the outcome in this matter; the Settle-
28 ment provides meaningful remedial and monetary benefits for the disputed claims; and the Parties

1  were represented by highly qualified counsel who, throughout this case, vigorously and adequately represented their respective parties' interests.

8.  The Settlement is in the best interests of the Settlement Class in light of the degree of recovery obtained in relation to the risks faced by the Settlement Class in litigating the Class Claims. The relief provided to the settling Class Members under the Settlement Agreement is appropriate as to the individual members of the settling Class and to the Class as a whole. All requirements of statute, rule, and Constitution necessary to effectuate the Settlement have been met and satisfied. The Parties shall effectuate the Settlement Agreement in accordance with its terms.

9.  By operation of this Final Approval Order and Judgment, Plaintiff on the one hand, and the Released Parties on the other hand, shall have unconditionally, completely, and irrevocably released and discharged released and forever discharged each other from and shall be forever barred from instituting, maintaining, or prosecuting any and all claims, liens, demands, actions, causes of action, obligations, damages or liabilities of any nature whatsoever, whether legal or equitable or otherwise, known or unknown, that actually were, or could have been, asserted in the Litigation, based upon any violation of any state or federal statutory or common law or regulation, and any claim arising directly or indirectly out of, or in any way relating to, the claims that actually were, or could have been, asserted in the Litigation, that Plaintiff on the one hand, and Defendant on the other hand, have had in the past, or now have, related in any manner to the Released Parties' products, services or business affairs, and any and all other claims, liens, demands, actions, causes of action, obligations, damages or liabilities of any nature whatsoever, whether legal or equitable or otherwise, known or unknown, that Plaintiff on the one hand, and Defendant on the other hand, have had in the past or now have, related in any manner to any and all Released Parties' products, services or business affairs, or otherwise..

10. By operation of this Final Approval Order and Judgment, Settlement Class Members shall have unconditionally, completely, and irrevocably released and discharged the Released Parties from any and all claims, rights, demands, actions, causes of action, suits, debts, liens, contracts, liabilities, agreements, costs, expenses, or losses of any kind whatsoever, including any known or unknown claims, which Plaintiff or Class Members that actually were, or could have

1  been, asserted in the Litigation based upon the facts alleged in the Litigation, but only as they
2  concern, or relate to, allegations that (i) there are no system and recovery disks included with the
3  Acer computer, (ii) the preinstalled operating system on the hard drive that is shipped with the
4  Acer computer is missing features or functions that are part of Windows, (iii) the recovery disks
5  that can be burned from the hard drive shipped with the Acer computer is missing features or
6  functions that are part of Windows, and/or (iv) the recovery disks that can be purchased from
7  Acer for an additional fee are missing features or functions that are part of Windows.

8      11.    "Released Parties" means Acer; any entity that directly or indirectly controls, or is
9  controlled by, or is in common control with Acer; all of Acer's past and present officers, direc-
10 tors, agents, designees, servants, attorneys, employees, parents, subsidiaries, associates, divisions,
11 affiliates, heirs; and all successors or predecessors in interest, assigns or legal representatives.

12     12.    Plaintiff and Settlement Class Members shall, by operation of this Final Approval Or-
13 der and Judgment, be deemed to have waived the provisions, rights and benefits of California
14 Civil Code § 1542, and any similar law of any state or territory of the United States or principle
15 of common law. Section 1542 provides:

16     A general release does not extend to claims which the creditor does not know or suspect to
17     exist in his or her favor at the time of executing the release, which if known by him or her
18     must have materially affected his or her settlement with the debtor.

19     13.    Nothing herein shall bar any action or claim to enforce the terms of the Settlement
20 Agreement.

21     14.    No action taken by the Parties, either previously or in connection with the negotia-
22 tions or proceedings connected with the Settlement Agreement, shall be deemed or construed to
23 be an admission of the truth or falsity of any claims or defenses heretofore made or an acknowl-
24 edgment or admission by any Party of any fault, liability or wrongdoing of any kind whatsoever
25 to any other Party. Neither the Settlement Agreement nor any act performed or document exe-
26 cuted pursuant to or in furtherance of the Settlement: (a) is or may be deemed to be or may be
27 used as an admission of, or evidence of, the validity of any claim made by the Settlement Class
28 Members or Class Counsel, or of any wrongdoing or liability of the persons or entities released

under this Agreement, or (b) is or may be deemed to be or may be used as an admission of, or evidence of, any fault or omission of any of the persons or entities released under this Agreement, in any proceeding in any court, administrative agency, or other tribunal. Defendant's agreement not to oppose the entry of this Final Approval Order shall not be construed as an admission or concession by Defendant that class certification was appropriate in the Litigation or would be appropriate in any other action.

15. Class Counsel applied for an award of attorneys' fees and costs and an incentive award for the Settlement Class Representative. Class Counsel specifically requested $999,109.05 in attorneys' fees, $200,890.95 in unreimbursed expenses, and a $15,000 incentive aware. The Court find that these amounts are just, fair and reasonable as follows.

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). In the Ninth Circuit, district courts may "choose either the percentage-of- the-fund or the lodestar method." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002). Plaintiff requests that the Court use the lodestar method and, if necessary, then perform a cross-check to confirm the reasonableness as a percentage of the benefits conferred on the class. (Dkt.# 198.)

A reasonable attorneys' fee award using the lodestar method is determined in two steps. First, the Court determines a lodestar amount by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. *See Cunningham v. County of Los Angeles*, 879 F.2d 481, 484 (9th Cir. 1988). Second, the Court determines whether the lodestar amount must be adjusted to accurately reflect a reasonable fee. *Id.* There is, however, a strong presumption that the lodestar figure is a reasonable fee. *See Gates v. Deukmejian*, 987 F.2d 1392, 1397 (9th Cir. 1992); *see also City of Burlington v. Dague*, 505 U.S. 557, 559-60 (1992) (citation omitted). In assessing the reasonableness of rates, the court is "entitled to take account of fees customarily charged by that attorney and others in the community for similar work." *Ackerman v. W. Elec. Co., Inc.*, 860 F.2d 1514, 1520 (9th Cir. 1988). Class Counsel contends that they have expended a total of 3611.45 hours pursuing the litigation, billed at rates ranging from $375 to $625 per hour, for a total lodestar of $2,148,537.50. (See Dkt.## 198, 203.) Based on the evidence and

argument submitted, and in light of rates that courts in the Northern District have approved in the past,[1] the Court finds that the amount of time spent and the hourly rates for the attorneys are fair, just and reasonable under the circumstances, are within the realm of reasonable rates for similar services provided by attorneys of similar quality and experience in their respective legal communities, and that the amount of work performed is reasonable in a case of this complexity, length and adversarial posture. Moreover in this case, the amount of attorney fees requested by Class Counsel is significantly lower than the approved lodestar of $2,148,537.50. In addition, Objectors makes no objections to Class Counsel's lodestar calculation. (See Dkt.## 199, 200, 202.)

Although not required, a cross-check based on the percentage of the benefit reveals the reasonableness of the attorney fees requested. When applying the percentage method, "25 percent has been a proper benchmark figure." *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 273 (9th Cir. 1989). To determine the amount to be awarded, the percentage "should be assessed against every class members' share, not just the claiming members." *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990) *(citing Boeing Co. v. Van Gemert*, 444 U.S. 472, 480 (1980)). This is true even if "some class members make no claims against the fund so that money remains in it that otherwise would be returned to the defendants." *Williams v. MGM-Pathe Communications Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997).

However, while 25 percent is the benchmark, the Court can then adjust the percentage amount higher or lower to account for any "unusual circumstances" involved in the case. *Graulty*, 886 F.2d at 272. The court should consider "all circumstances" of the case in reaching a reasonable percentage. *See Vizcaino*, 290 F.3d at 1048. Factors that a court may consider include: "[1] the strength of plaintiffs' case; [2] the risk, expense, complexity, and likely duration of further litigation; [3] the risk of maintaining class action status throughout the trial; [4] the amount offered in settlement; [5] the extent of discovery completed, and the stage of the proceedings; [6] the experience and views of counsel; [7] the presence of a governmental participant; and

---

[1] *See, e.g., Stuart v. Radioshack Corp.*, No. C 07-4499 EMC, 2010 WL 3155645, at *6-7 (N.D. Cal. Aug. 9, 2010) (approving billing rates between $450 and $1000 per hour); *Suzuki v. Hitachi Global Storage Technologies, Inc.*, No. C 06-7289 MHP, 2010 WL 956896, at *3-4 (N.D. Cal. Mar. 12, 2010) (approving billing rates of $650 for partner attorneys and $500 for associate attorneys).

1  [8] the reaction of the class members to the proposed settlement." *Rodriguez v. West Publ'g*
2  *Corp.*, 563 F.3d 948, 963 (9th Cir. 2009) (citations omitted).

3  Here, the requested amount of attorney fees is $999,109.05. The total potential monetary
4  recovery for the Class is approximately $280 million (Dkt.## 177, 198), but the amount of bene-
5  fits actually claimed as of February 1, 2012 is estimated to be $314,793.82. (See Declaration of
6  Amy L. Lake Decl., (Dkt.# 204.); Dkt# 208; Supplemental Declaration of Amy L. Lake Regard-
7  ing Claim Form Processing (Dkt.# 209).) However, as the Ninth Circuit has held that when cal-
8  culating attorneys' fees under the percentage method, the Court should base the percentage on the
9  total potential recovery, not the actual recovery claimed by the Class. *See Williams*, 129 F.3d at
10 10267. When compared to the potential recovery of $280 million, the fee requested by Class
11 Counsel amounts to less than .5 percent of the total fund, well below the Ninth Circuit benchmark
12 of 25 percent. Thus, the Court finds the requested amount of attorney fees reasonable under the
13 percentage method.

14 On the basis of the Settlement Class Representative's participation in this litigation, as well
15 as the risk he incurred bringing this case, the Court find the incentive award to be fair and reason-
16 able. *See Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995); Dkt.#
17 198. Finally, Class Counsel requests reimbursement of $200,890.95 for litigation expenses that
18 include, without limitation, mediation fees, expert witnesses, travel, deposition costs, filing fees
19 and service fees. (Dkt.# 198.) Based on its knowledge of this case, and have reviewed the sub-
20 missions of Class Counsel on the subject, the Court finds these expenses to have been reasonably
21 incurred in the prosecution of this litigation. Acer shall accordingly pay Class Counsel
22 $1,200,000 in fees and expenses and shall pay Class Representative an incentive awards in the
23 amount of $15,000. Such amounts plus Interest shall be paid according to the terms of the Set-
24 tlement Agreement.

25 16. Except as provided in this Order, Plaintiff shall take nothing by his Complaint, and fi-
26 nal judgment shall be entered thereon, as set forth in this Order.

27 17. Without affecting the finality of the judgment hereby entered, the Court reserves ju-
28 risdiction over the implementation of the Settlement Agreement.

18. Subject to Court approval, the parties may stipulate to reasonable extensions of time to carry out any provisions of the Settlement Agreement.

19. There is no just reason for delay in the entry of this Final Judgment, and immediate entry by the Clerk of the Court is expressly directed pursuant to Rule 54(b) of the Federal Rules of Civil Procedure.

The Clerk shall close this file.

Dated: February 14, 2012

JAMES WARE
United States District Chief Judge